James C. WRIGHT *v.* STATE of Arkansas

CR 79-157                                          590 S.W. 2d 15

Opinion delivered December 3, 1979
(In Banc)

*Donald E. Bishop,* for appellant.

*Steve Clark,* Atty. Gen., by: *Joseph H. Purvis,* Deputy Atty. Gen., for appellee.

FRANK HOLT, Justice. A jury found appellant guilty of aggravated robbery (Ark. Stat. Ann. § 41-2103 [Repl. 1977]) as a habitual offender with more than four prior convictions and assessed his punishment at 55 years' imprisonment (Ark. Stat. Ann. § 41-1001 (2) (a) [Repl. 1977]). Appellant, through the public defender, first contends that the court erred in denying his petition for a certificate of summons to several nonresident witnesses, or in the alternative, in denying his motion to depose these witnesses.

The issuance of a petition for certification of a material nonresident witness, which compels attendance at government expense, is not an absolute right and lies within the discretion of the trial court. Ark. Stat. Ann. § 43-2006 (Repl. 1977). See also *Reistroffer* v. *United States,* 258 F. 2d 379 (8th Cir. 1958). It is well settled that the court's ruling on matters pertaining to the trial will not be set aside absent a "manifest abuse of discretion." *Roberts & Charles* v. *State,* 254 Ark. 39, 491 S.W. 2d 390 (1973); and *Petty* v. *State,* 245 Ark. 808, 434 S.W. 2d 602 (1968). Here the appellant entered a plea of not guilty by reason of insanity. At a pretrial hearing, appellant sought the attendance of several nonresident witnesses (three psychiatrists, a pediatrician, an osteopath, and the program director at a California State hospital). The trial court denied the petition and the motion to depose. Appellant argues that this was reversible error because the witnesses' testimony was material and relevant to his insanity defense; i.e., he was suffering from schizophrenia and that a schizophrenic may not be able to control his behavior.

The proffered testimony concerning appellant's mental condition was conflicting. None of the physician witnesses had examined or treated the appellant within the past two years, and some had not seen him in more than four years. The appellant admitted that the 1966 diagnosis of schizophrenia by one of the psychiatrists was contrary to the final report of eight doctors who had declared him sane and returned him to a Texas court to stand trial. He also admitted that although one of the psychiatrists had committed him to a California State Hospital in 1977, the final hospital report had declared him sane, and he was returned to the California court system. The court allowed appellant's request that reports of the various hospitals and treating physicians be admitted into evidence. It appears the Arkansas State Hospital, which found appellant without psychosis, had the benefit of appellant's previous treatments at these hospitals and by these physicians. In the circumstances, we certainly cannot say that the trial court abused its discretion.

Neither can we agree with appellant's second contention that the court erred in denying his motion for a change of

venue due to prejudicial pretrial publicity in the community. Appellant adduced testimony from two local news media representatives that numerous news items were published about this and other pending charges against appellant during the seven months' interim between his arrest and trial. Appellant did not support his petition by any affidavits as required by Ark. Stat. Ann. § 43-1502 (Repl. 1977). There was no evidence that "the minds of the inhabitants of the county in which the cause is pending are so prejudiced against the defendant that a fair and impartial trial cannot be had therein." Ark. Stat. Ann. § 43-1501 (Repl. 1977). Since the appellant has not met his burden of proof by demonstrating that "a fair trial was not likely to be had in the county", we cannot say that the trial court abused its discretion in denying the motion. *Kirkendall* v. *State,* 265 Ark. 853, 581 S.W. 2d 341 (1979).

Appellant's third contention is also without merit. He avers that the court, after refusing to sequester the jury, erred in not granting a mistrial after five of the jurors had read an allegedly prejudicial newspaper article on the morning of the second day of trial. Although the major portion of the article summarized the testimony and proceedings of the first day, the closing sentences stated that "Wright also faces additional charges of a second count of aggravated robbery, arson and escape in Boone County. No trial date has been set in those cases." When the judge examined the jurors in chambers concerning possible prejudices, each stated in effect that what they had read in the article was covered the previous day in court and nothing they had read would bias or prejudice their opinion as jurors. None indicated they had read the concluding part of the news article. We cannot say that the trial court abused its discretion in refusing to grant a mistrial. See *Moseley* v. *State,* 258 Ark. 485, 527 S.W. 2d 616 (1975); and *Cobb* v. *State,* 265 Ark. 527, 579 S.W. 2d 612 (1979).

Neither can we agree with appellant's contention that the trial court erred in admitting his tape recorded confession into evidence. When the question of the voluntariness of a confession is raised on appeal, we review all of the evidence and make an independent determination based on the totality

of the circumstances. The burden is on the state to prove the voluntariness of an in-custody confession. *Clark* v. *State,* 264 Ark. 630, 573 S.W. 2d 622 (1978). The finding of the trial judge will not be set aside unless it is clearly against the preponderance of the evidence. *Degler* v. *State,* 257 Ark. 388, 517 S.W. 2d 515 (1974). Here one of the officers, during the course of questioning, stated that "things would probably go easier if Wright told the truth". In *Penton* v. *State,* 194 Ark. 503, 109 S.W. 2d 131 (1937), an officer told the accused that "it would go well with him if he told the truth." We upheld the admissibility of the confession stating that the statement "was merely an expression of an opinion, and . . . was not coupled with innuendo or subtleties calculated to deceive the prisoner." In *Crooker* v. *California,* 357 U.S. 433, 78 S. Ct. 1287, 2 L. Ed. 2d 1448 (1958), the court stated that an admonition by an officer to tell the truth does not render a confession involuntary. Here the officer also stated that appellant told him he was "involved in" another robbery and, as requested, he told appellant he "would try to get the FBI involved." Appellant, age 30, is no stranger to the criminal justice system inasmuch as he admittedly has been arrested some twenty times and incarcerated six or seven times. We certainly cannot agree with appellant's argument that his confession was a result of a promise of benefits by the investigator and that the court, therefore, erred in holding the confession voluntary and admissible.

Neither do we agree with appellant's claim that he was in a period of mental stress which made him unable to control his impulses and incompetent to make a confession. Appellant places great emphases on the testimony of a Dr. Jones of the Ozark Regional Mental Health Center who examined him while he was in the county jail. Dr. Jones testified that there was a "possibility of underlying psychosis" in the appellant's mental condition. However, there was no acute psychosis at the time he examined the appellant; the appellant's physical complaints were most likely delusionary; and at the time of the examination, the appellant had good contact with reality. Also appellant's reliance on a 1975 psychotic report of a Dr. Cole at a California State Hospital is also misplaced. Although the report states that the appellant is "at times" "definitely psychotic", a later report by the same

hospital staff adjudged the appellant sane and returned him to the California court system. We cannot say that the 1975 report of Dr. Cole was more credible than that of the staff's report and Dr. Jones' testimony. Further, he was examined by the Arkansas State Hospital staff and found without psychosis.

Appellant further argues that his confession was involuntary inasmuch as he had taken four to six dexadrine tablets, an amphetamine which stimulates the body system, shortly following the robbery and was under the influence of this drug when he gave his confession. He testified that the dexadrine made him "talk a lot" and that he would not have given the statement had he not been under the influence of the drug. The officers testified that appellant seemed normal and coherent and there was nothing in his appearance to lead them to believe that he was under the influence of drugs. Another officer, who had the first contact with the appellant a short time following the robbery, testified that the appellant seemed normal and showed no signs of irregular behavior. It was for the trial court to resolve the credibility of the witnesses. After fully reviewing appellant's three-faceted argument, we cannot say the trial court's finding that appellant's confession was voluntary is clearly against the preponderance of the evidence.

Appellant argues next that there was an invalid, warrantless search of his automobile when he was arrested and certain items found therein must be suppressed. On appeal we make an independent determination of whether this evidence should have been suppressed and affirm the finding of the trial court unless it is clearly against the preponderance of the evidence. *State* v. *Osborn,* 263 Ark. 554, 566 S.W. 2d 139 (1978). Here, based upon a description of the individual who had committed the robbery and the car he was driving, a policeman stopped appellant on a busy highway some distance from the crime scene. Appellant was observed reaching toward the right floorboard. Within a few minutes a state trooper appeared. This officer looked through the car window and saw an open grocery sack containing guns and what appeared to be some prescription bottles on the front floorboard. The officer removed the sack and recovered two

pistols, numerous billfolds and several drug containers.

In *Kelly* v. *State,* 261 Ark. 31, 545 S.W. 2d 919 (1977), we said:

> The observation of evidence in plain view is not a search, or to say the least, not an unreasonable one. A resulting seizure is not the result of an unreasonable search. Looking at what is in plain view, or not concealed, is not a search, as prying into hidden places would be. (Citing cases.) The basic test is whether the officer had a right to be in the position he was when the objects seized fell into his plain view.

To the same effect see *Berry* v. *State,* 263 Ark. 446, 565 S.W. 2d 418 (1978). Here the trial court correctly concluded that the warrantless search was justified under the "plain view" doctrine.

Neither can we agree with appellant's contention that the court erred in denying his motion for a mistrial after a paper sack marked "Wheeler" was shown to the jury. The appellant argues that the name on the sack improperly connects him with the local robbery of a Mrs. Wheeler. The sack contained drug containers taken during the robbery. The state did not introduce the sack into evidence and there was no indication that any of the jurors saw the name. The denial of appellant's motion for a mistrial did not constitute an abuse of discretion by the trial court. See *Cobb* v. *State,* 265 Ark. 527, 579 S.W. 2d 612 (1979).

Similarly, the fact that one of the witnesses subpoenaed by the appellant failed to appear at the trial would not necessitate a mistrial. According to appellant's proffer, this witness would testify that while he was a resident at the Arkansas State Hospital, he had observed conditions that "were not conducive to the performance of psychological or medical examinations in cell block areas." When the court denied appellant's motion for a mistrial, the appellant took the stand and testified that he had been unable to concentrate during the psychological testing. We hold that the trial court did not abuse its discretion in refusing to grant the mistrial.

Appellant's eighth contention that the court erred in denying its motion to quash the amended information is also meritless. One month prior to trial, upon rejection of a negotiated plea, the information was amended to charge the appellant as a habitual offender pursuant to Ark. Stat. Ann. § 41-1001 (2) (a). Suffice it to say, application of the statute does not constitute double jeopardy, the amendment was timely filed, and it was not error for the prosecutor to file the habitual offender charge when the appellant withdrew from plea negotiations. See *Dolphus* v. *State,* 248 Ark. 799, 454 S.W. 2d 88 (1970); *Finch* v. *State,* 262 Ark. 313, 556 S.W. 2d 434 (1977); *Bordenkircher* v. *Hayes,* 434 U.S. 357 (1978); and *Davis* v. *Bennett,* 400 F. 2d 279 (8th Cir. 1968).

Appellant next urges that his convictions of separate felonies, which resulted in concurrent sentences, should only count as one conviction in applying the habitual criminal statute. In effect he argues confinements rather than convictions should be counted. We disagree. Section 41-1001 (2) speaks in terms of convictions rather than confinements. See also *Brown* v. *State,* 264 Ark. 248, 570 S.W. 2d 251 (1978). The burglary exception is not applicable here. Ark. Stat. Ann. § 41-1001 (3) (Repl. 1977).

Appellant's ninth contention is also without merit. Since appellant was brought to trial within the first full term of the Boone County Circuit Court following his arrest, he was not denied his constitutional right to a speedy trial. *Wade* v. *State,* 264 Ark. 321, 571 S.W. 2d 231 (1978); Ark. Stat. Ann. § 22-310 (Repl. 1962); and Vol. 4A, Ark. Stat. Ann., Rules of Crim. Proc., Rule 28.1 (a) (Repl. 1977).

Neither can we agree with appellant's argument that the court erred in denying his motion for examination by a cardiovascular specialist, a neurologist and a nerve specialist during his seven months' incarceration pending trial and forcing him to trial without appropriate medical treatment. Appellant complained of various ailments including heart problems and a painful lump in his neck. The record indicates that he had been examined by at least four physicians and had undergone numerous blood and heart tests to no avail. Suffice it to say that appellant was not denied proper

medical treatment. See *Andrew* v. *State*, 265 Ark. 390, 578 S.W. 2d 585 (1979).

Appellant's final contention that his 55 year sentence exceeds the maximum allowed by law is also meritless. In view of appellant's seven prior felony convictions, the 55 year sentence imposed by the jury was consistent with the plain language of the statutes which provide in pertinent part:

§ 41-2102 (2):

Aggravated robbery is a class A felony.

§ 41-1001 (2):

A defendant who is convicted of a felony and who has previously been convicted of four [4] or more felonies, or who has been found guilty of four [4] or more felonies, may be sentenced to an extended term of imprisonment as follows:

(a) not less than fifty (50) years nor more than life, if the conviction is of a class A felony;

Affirmed.

HARRIS, C.J., not participating.