Herbert JACKSON *v.* STATE of Arkansas

CR 80-270                    617 S.W. 2d 13

Supreme Court of Arkansas
Opinion delivered June 15, 1981

*E. Alvin Schay*, State Appellate Defender, by: *John Settle*, Deputy Public Defender, for appellant.

*Steve Clark*, Atty. Gen., by: *Leslie M. Powell*, Asst. Atty. Gen., for appellee.

RICHARD B. ADKISSON, Chief Justice. Following a jury trial in Sebastian County Circuit Court appellant, Herbert Jackson, was convicted of first degree murder, sentenced to life imprisonment, and fined $15,000 as an habitual offender. He now appeals alleging that the trial court erred in

finding that his two statements were voluntarily made. Appellant asserts that he was incapable of comprehending his *Miranda* rights and of giving a voluntary statement regarding the crime due to his drunken and drugged condition.

In reviewing the voluntariness of confessions we make an independent determination based upon the totality of the circumstances resolving all doubts in favor of individual rights and safeguards, and the trial court's holding will not be reversed unless clearly erroneous. *Degler* v. *State*, 257 Ark. 388, 517 S.W. 2d 515 (1974); *Giles* v. *State*, 261 Ark. 413, 549 S.W. 2d 479 (1977). The State bears the burden of proving the voluntariness of in-custodial confessions by a preponderance of the evidence under Ark. Stat. Ann. § 43-2105 (Repl. 1977); and, any conflict in the testimony of different witnesses is for the trial court to resolve. *Wright* v. *State*, 267 Ark. 264, 590 S.W. 2d 15 (1980).

A *Denno* hearing was conducted by the trial court on appellant's motion to suppress his statements. Testimony was taken from prosecutor Ron Fields and detective James Davis on behalf of the State, and from the appellant, his brother, Roy Jackson, and Fort Smith police officer C. C. Davis on behalf of the appellant. Both statements were introduced at this pre-trial hearing along with the results of a breathalyzer test and a *Miranda* rights form which was signed by the appellant, all without objection.

Prosecutor Fields testified that he took a statement from appellant at 8:30 p.m. on May 3, 1980, in the presence of detectives James Davis and Charles James; that he explained the *Miranda* rights to appellant and received his acknowledgement of understanding; that no coercion, threats or promises were used to obtain the statement; that appellant was very responsive during the questioning and was coherent; that no slurred speech was evident; that, other than the odor of alcohol, there were no evident physical characteristics indicating intoxication; and, that appellant gave specific details of his movements around the victim's car before the shooting took place.

Next, detective James Davis testified that on May 3 he had arrested the appellant at 6:30 p.m. following a chase; that *Miranda* rights were given to the appellant at the time of the arrest and were later read to him from a police department form at the jail, and the appellant indicated his understanding of his rights (although refusing to talk at that time); that appellant had no trouble in walking and had no slurred speech at the time of arrest; that although he had alcohol on his breath, appellant was not drunk in his opinion; that on May 4 at 5:25 p.m. appellant was again advised of his rights and signed Form 59-A; that appellant then gave an oral statement in his presence which was typed by detective Mike Brooks and which was later signed by the appellant; that appellant was in no way threatened or coerced to make the statement and that no promises were made to him to obtain it, although appellant was "very nervous."

Fort Smith police officer C. C. Davis testified without objection as a qualified breathalyzer examiner and stated that he had given the appellant a breath test at 10:11 p.m. on the night of May 3 and that appellant registered .09 percent according to the chart that came out of the machine. Officer Davis then testified that the alcohol content of the body declines at a rate of about .02 percent per hour and hypothesized that if one assumed that the appellant was in custody and did not have any alcohol between 6:00 and 10:00 p.m. then one could add approximately .02 percent per hour from the time he was arrested until the test was given to arrive at his blood alcohol content at 6 o'clock earlier that evening. That, using this formula, that would be approximately .17 percent blood alcohol content at 6 o'clock and about .12 percent at 8:30 p.m.; that appellant would not necessarily be intoxicated but would be under the influence under these conditions.

The appellant's brother, Roy Jackson, next testified that he was a trusty at the jail at the time appellant was brought in and that he saw him and noticed that his eyes were "real red" and that "he looked like he had been on drugs." He testified that he had seen his brother drunk before and that he wasn't drunk, he was just drugged. Roy

Jackson further testified that appellant was acting like he had been on dope two or three days; that he was sluggish and had a strange walk; that alcohol did not make his eyes red.

The last to testify was the appellant, Herbert Jackson. He stated that on the date of his arrest he had left work early in the morning and began drinking both beer and gin and smoking angel dust during both the morning and afternoon hours; that he did not remember being arrested; that, although he remembered seeing Mr. Fields, he didn't remember making the first statement; that angel dust affected his mind so that he was "high" when he talked to Mr. Fields; that he remembered being pulled out of the jail cell three times; that the day after the incident he didn't even remember whether or not he was fed; that he remembered giving a statement on Sunday (the day after the incident) to some police officers and seeing the waiver of rights form which was introduced as Exhibit No. 2 by the State; that he recognized his signature on the form; that he didn't recall whether or not he had been advised of his rights by either Mr. Fields or the police officers before either statement was taken; that he had been arrested in the past between 100 and 150 times and was aware of his rights on some of those occasions and was not so aware on others; that he remembered being asked several times if he was drunk.

This testimony was contradictory to both of the statements introduced at the pre-trial hearing against the appellant. In the May 3 statement appellant stated that he had "understood every word ... [the prosecutor] said"; that he had only two to three beers that day and was not drunk. In his second statement, the appellant indicated that during the day he had a six-pack of beer. No mention was made in either statement of appellant's having smoked angel dust or of having had gin that day.

We cannot say that the trial court's finding of voluntariness with regard to either statement was clearly erroneous after reviewing the totality of the circumstances in light of the superior position of the trial court to judge the credibility of the witnesses.

Where life imprisonment or death is imposed in the court below, the Supreme Court shall review the entire record for errors prejudicial to the right of the appellant. Rule 36.24, Ark. Rules Crim. Proc., Ark. Stat. Ann., Vol. 4A (Repl. 1977). To facilitate this review, Rule 11(f), Rules of the Supreme Court, Ark. Stat. Ann., Vol. 3A (Repl. 1979) was promulgated. Under this rule both the counsel for appellant and counsel for the State must examine the record page by page to be certain that all the objections are brought to the Court's attention. We have examined all objections and find no error.

Affirmed.