James C. WRIGHT, Appellant,

v.

A.L. LOCKHART, Director, Arkansas Department of Correction, Appellee.

No. 89–1194.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 16, 1990.

Decided Sept. 20, 1990.

---

T. Craig Jones, Little Rock, Ark., for appellant.

Joseph Svoboda, Asst. Atty. Gen., Little Rock, Ark., for appellee.

Before McMILLIAN and MAGILL, Circuit Judges, and HANSON,* Senior District Judge.

* The Honorable William C. Hanson, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

McMILLIAN, Circuit Judge.

James C. Wright, an inmate incarcerated in the Arkansas Department of Corrections, appeals from a final order entered in the United States District Court[1] for the Eastern District of Arkansas denying his petition for a writ of habeas corpus. For the reasons discussed below, we affirm the order of the district court.

## I.

On July 20, 1978, Wright was arrested and charged with aggravated robbery. Through appointed counsel, Wright pleaded not guilty by reason of insanity and the state trial court ordered Wright committed to the Arkansas State Hospital for a mental examination on July 28, 1978. The state trial court also ordered that Wright be examined at the Ozark Regional Mental Health Center (Ozark Center). The Arkansas State Hospital and Ozark Center concluded that Wright was sane. The psychiatrist from the Ozark Center qualified his report by stating that Wright might suffer from an "underlying psychosis" and recommended further evaluation.

Three weeks prior to trial, Wright filed a petition pursuant to Ark.Stat.Ann. § 43–2006 (1977)[2] for a Certificate of Summons to Nonresident Witnesses, seeking a court order compelling several physicians, psychiatrists, medical staff, and family members to testify in support of his insanity defense. Wright also filed a Motion for Depositions, seeking to depose the nonresident witnesses as an alternative to requiring their attendance at trial. The state trial court denied both motions. However, the trial court permitted the reports from the various medical facilities where Wright had been treated to be admitted into evidence.

On the second morning of a two-day jury trial, five jurors read a newspaper article containing inadmissible evidence of other charges pending against Wright. After Wright moved for a mistrial, the state trial court extensively questioned each juror who admitted reading the article. Each juror stated that the portions of the article they had read had been covered in court the previous day. No juror had read the portion of the article stating that Wright had been charged with other unrelated offenses. Each of the affected jurors further stated that nothing in the article would prevent them from rendering a fair verdict. After conducting this voir dire, the trial court concluded that Wright could still obtain a fair trial and denied Wright's motion for a mistrial.

The jury found Wright guilty of aggravated robbery. Because Wright had been convicted of four or more previous felonies, he was sentenced as a habitual offender to 55 years imprisonment. On appeal, the Arkansas Supreme Court affirmed his conviction. *Wright v. State*, 267 Ark. 264, 590 S.W.2d 15 (1979) (*Wright*). In 1985, Wright filed two Ark.R.Crim.P. 37 petitions for post-conviction relief. The first petition was returned to him as untimely because it was not filed within three years of the date of his commitment as required by Ark.R. Crim.P. 37.2(c). The Arkansas Supreme Court denied the second petition because the claims had been litigated at trial and were insufficient to void the conviction.

In January 1986, after exhausting his state remedies as required by 28 U.S.C. § 2254(b), Wright filed the instant *pro se* petition for a writ of habeas corpus, raising 16 grounds for relief. Wright subsequently filed an amended petition raising four additional grounds for relief, some of which were repetitive of those contained in the initial petition. The state answered both the initial and amended petitions in a timely fashion, and Wright filed a reply. After reviewing the issues raised in the petition, the district court appointed counsel to represent Wright. Wright's counsel thereafter filed an amended habeas petition in which he realleged four grounds for relief.

---

1. The Honorable Elsijane T. Roy, Senior United States District Judge for the Eastern District of Arkansas.

2. This provision is now codified at Ark.Code Ann. § 16–43–403 (1987).

The district court found that Wright had failed to raise 12 of his claims before the state courts, and that he was procedurally barred from raising them in federal court because he had failed to demonstrate cause and prejudice under *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1972).[3] The district court rejected the remainder of Wright's claims on the merits, holding as follows: (1) the state trial court did not err in denying his motions for compulsory process requiring seven out-of-state witnesses to appear and testify on behalf of his insanity defense; (2) the state trial court did not err in refusing to grant a mistrial after five members of the jury had read a newspaper article which summarized the first day of trial and mentioned that other unrelated charges were pending against Wright; (3) the trial court did not err in refusing to grant a mistrial or continuance when one of Wright's witnesses failed to appear for trial because the proposed testimony was probably irrelevant and in any event cumulative; (4) the tape-recorded confession given by Wright after his arrest was voluntary; (5) the trial court did not err in admitting drugs found in the possession of Wright into evidence; and (6) the trial court's refusal to grant Wright's motion for an examination by a specialist for alleged physical symptoms did not deprive him of his right to effectively assist counsel at trial. Wright filed a timely appeal of the district court's order, raising three issues for review.

## II.

Wright first argues that the district court erred in refusing to grant his petition because of the trial court's refusal to issue a summons of compulsory process or order depositions of witnesses material to his insanity defense. Wright points out that his state of mind was the only issue at trial because he had confessed to the aggravated robbery. Wright contends that the trial court's denial of compulsory process was arbitrary and deprived him, as an indigent defendant, of his sixth amendment right of compulsory process to compel the witnesses necessary to present an adequate insanity defense. Wright argues that the anticipated testimony was not remote in time and would have had a direct impact on whether he was criminally insane at the time he committed the offense. In response, Lockhart contends that the trial court did not err in refusing to order compulsory process or depositions because the proffered testimony was conflicting, remote in time, or cumulative.

Wright objected to the trial court's refusal to order compulsory process or depositions of the following seven witnesses: (1) Dr. D. Sidhu, a pediatrician who had counseled Wright on two occasions, the second time approximately four months before the crime was committed; (2) Dr. Kenneth Cole, a California psychiatrist who had diagnosed Wright as schizophrenic in 1975 and 1977; (3) David Bourne, program director of the Atascadero State Hospital in California, who had some knowledge of Wright's psychological problems; (4) Eric Wright, Wright's brother, who had seen Wright in a condition of stress a few weeks before the crime; (5) Mrs. Barbara Wright, Wright's mother,[4] who had seen him in a stressful condition sixteen days before the crime; (6) Dr. Richard Helfrey, an osteo-

---

**3.** The district court found the following claims procedurally barred: (1) trial court's failure to conduct a competency hearing; (2) trial court's failure to make a fitness to proceed determination; (3) alleged unconstitutionality of Arkansas criminal insanity statutes because they place the burden of proof on defendant; (4) alleged bias and inadequacy of state procedures to determine sanity and competency to stand trial; (5) trial court's alleged refusal to admit a psychiatric report prepared by Dr. Kenneth Cole which buttressed Wright's claim of incompetence; (6) trial court's failure to give a jury instruction on insanity; (7) the "accumulation of incidents at trial" preventing Wright from receiving a fair trial; (8) alleged error of trial court in permit-

ting the jury to return an ambiguous verdict on the number of Wright's prior convictions and in permitting the jury to decide a question of law; (9) alleged ineffective assistance of counsel at trial and on direct appeal; (10) absence of fair appellate review of his conviction; (11) alleged denial of the opportunity to seek collateral relief in the Arkansas state courts; and (12) alleged fundamental unfairness of the methods used by the state in gathering and presenting evidence of Wright's sanity.

**4.** Mrs. Wright attended the trial at her own expense and testified on her son's behalf, so we need not address whether the trial court's refusal to order compulsory process of her was error.

path who had treated Wright more than seven or eight years before the trial; and (7) Dr. John Holbrook, a physician who had treated Wright in 1966. Wright now concedes that it was proper for the trial court to refuse to compel Doctors Helfrey and Holbrook because they had not treated him within seven or eight years of the trial and their proffered testimony would have been remote. However, Wright contends that the state courts and the district court focused on these more remote witnesses in order to deny access to the others.

On Wright's direct appeal, the Arkansas Supreme Court found that the state trial court's decision not to compel the attendance of the nonresident medical witnesses was not an abuse of discretion because the proffered testimony was conflicting and remote. *Wright*, 590 S.W.2d at 18.[5] The district court held that these findings of fact were fairly supported by the record and thus entitled to a presumption of correctness under 28 U.S.C. § 2254(d) (1988). *Wright v. Lockhart*, No. PB–C–86–10, slip op. at 13 (E.D.Ark. Sept. 24, 1987). After reviewing the record, the district court concluded

> [t]he bulk of the testimony of the uncalled witnesses and the individuals to be deposed was remote in time. While it might have had some peripheral relevance, it cannot be said that the evidence would have directly impacted on a jury determination as to whether [Wright] was criminally insane when he committed the charged offenses.

*Id.* at 15.

█ The sixth amendment provides in relevant part that "[i]n all criminal prosecutions the accused shall enjoy the right to ... have compulsory process for obtaining witnesses in his [or her] favor." U.S. Const.Amend. VI. In *Washington v. Texas*, 388 U.S. 14, 18–19, 87 S.Ct. 1920, 1922–23, 18 L.Ed.2d 1019 (1967) (*Washington*), the Supreme Court held that the right to compulsory process was incorporated into the due process clause of the fourteenth amendment:

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Id.* at 19, 87 S.Ct. at 1923. The right to compulsory process, however, is not absolute. In order to be entitled to compulsory process, the defendant must show how the witnesses' "testimony would have been both material and favorable to his [or her] defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982) (*Valenzuela-Bernal*); *see Perry v. Lockhart*, 871 F.2d 1384, 1386–87 (8th Cir.1989) (*Perry*), cert. denied, —— U.S. ——, 110 S.Ct. 378, 107 L.Ed.2d 363 (1989).[6]

█ The *Valenzuela-Bernal* court provided guidance on how to assess the mate-

---

**5.** The Arkansas Supreme Court reasoned as follows:

> The proffered testimony concerning appellant's mental condition was conflicting. None of the physician witnesses had examined or treated the appellant within the past two years, and some had not seen him in more than four years.... [Wright] admitted that although one of the psychiatrists had committed him to a California State Hospital in 1977, the final hospital report had declared him sane, and he was returned to the California court system. The court allowed appellant's request that reports of the various hospitals and treating physicians be admitted into evidence. It appears the Arkansas State Hospi-

tal, which found appellant without psychosis, had the benefit of appellant's previous treatments at these hospitals and by these physicians. In the circumstances, we certainly cannot say that the trial court abused its discretion.

*Wright v. State*, 267 Ark. 264, 590 S.W.2d 15, 18 (1979). The Arkansas Supreme Court made no mention of the state trial court's refusal to compel the attendance of the three nonmedical witnesses, David Bourne, Barbara Wright, and Eric Wright.

**6.** Arkansas has secured the right of compulsory process through Ark.Code Ann. § 16–43–403 (1987), which compels attendance of material nonresident witnesses at government expense:

riality of the proffered testimony of an excluded witness in a compulsory process claim:

> The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt ... This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

458 U.S. at 868, 102 S.Ct. at 3447 (quoting *United States v. Agurs*, 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2401–02, 49 L.Ed.2d 342 (1976) (*Agurs*)). In order to establish that noncompelled testimony is material, Wright must show that " 'the suppressed evidence might have affected the outcome of the trial.' " *Valenzuela–Bernal*, 458 U.S. at 868, 102 S.Ct. at 3447 (quoting *Agurs*, 427 U.S. at 104, 96 S.Ct. at 2397–98). Even if the denial of compulsory process amounts to constitutional error, we will not reverse a conviction if the error was harmless. *See Thomas v. Wyrick*, 687 F.2d 235, 239 (8th Cir.1982), *cert. denied*, 459 U.S. 1175, 103 S.Ct. 824, 74 L.Ed.2d 1020 (1983).

 In order to decide whether the proffered testimony of any of the excluded witnesses was *"relevant* and *material*, and ... *vital* to the defense," *Washington*, 388 U.S. at 16, 87 S.Ct. at 1921–22 (quoting *Valenzuela–Bernal*, 458 U.S. at 867, 102 S.Ct. at 3446 (emphasis in *Valenzuela–Bernal*)), we must evaluate the omission in the "context of the entire record." *Valenzuela–Bernal*, 458 U.S. at 868, 102 S.Ct. at 3447 (quoting *Agurs*, 427 U.S. at 112, 96 S.Ct. at 2402). We will therefore review the presentation of Wright's insanity defense at trial and then evaluate whether there was a reasonable likelihood that any of the noncompelled testimony could have affected the judgment of the trier of fact. *See Valenzuela–Bernal*, 458 U.S. at 874, 102 S.Ct. at 3450. Wright's first witness was his mother, Mrs. Barbara Wright. Mrs. Wright testified about her knowledge of Wright's mental problems in the past as well as the mental stress under which Wright allegedly suffered during the weeks before he committed the crime. The next witness was George Hyde, an inmate who saw Wright after he was arrested and brought into the Harrison City Jail. Hyde testified that Wright was very nervous when he was brought in and that Wright had stated he had used drugs. Hyde further testified that Wright had calmed down when he saw him in the county jail a few days later. Wright's third witness was Donald Van Cleve, a clinical social worker at the Arkansas State Hospital. Van Cleve testified that he obtained releases from Wright so that he could request the medical records from the various institutions where Wright had been treated. When Van Cleve received the reports, they were entered into Wright's record at the state hospital. Wright then took the stand and testified at length about his history of mental treatment and problems.

Wright's fifth witness was Dr. Edwin Jones, a consulting psychiatrist with the Ozark Center. Dr. Jones testified that he had examined Wright and found no acute psychosis at the time of the examination, but that it was possible that Wright suffered from a mild underlying psychosis. Dr. Jones' evaluation did not attempt to assess what Wright's condition might have been at the time of the crime. Dr. R.H. Whitehead, a psychiatrist with the Arkansas State Hospital, was Wright's sixth witness. Dr. Whitehead testified that he was aware of Wright's psychiatric history and the fact that Wright had been previously diagnosed as schizophrenic, but stated that

---

If a person in any state, which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions or proceedings ... is a material witness in a prosecution or proceeding pending in a court of record in this state ... a judge of such court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required.

The right to compel material witnesses is not absolute but rests within the sound discretion of the trial court. *Mackey v. State,* 279 Ark. 307, 651 S.W.2d 82, 86 (1983).

he had found no evidence of psychosis in Wright. Wright's seventh witness was Leonard Hester, the psychological examiner at the state hospital who had taken a personality inventory of Wright. Hester testified that the test results were not consistent with a diagnosis of schizophrenia and that he believed Wright was trying to appear sicker than he really was. Wright's final witness was Dr. Walter Oglesby, a psychiatrist and director of the Forensic Psychiatry Service at the Arkansas State Hospital. Dr. Oglesby explained that a clinical diagnosis is reached through a procedure called a staffing [7] and that he had seen Wright only on the day of the staffing. Dr. Oglesby testified that he was aware of the prior diagnosis of schizophrenia but found no evidence of it during the staffing.

Having reviewed the defense evidence presented by Wright, we next evaluate the materiality of the proffered testimony of the noncompelled witnesses. Because Mrs. Wright testified and Wright does not appeal the state trial court's refusal to compel the attendance of Doctors Helfrey and Holbrook, we need to address only the trial court's refusal to compel Dr. Sidhu, Dr. Cole, David Bourne, and Eric Wright. Dr. Sidhu, a friend of Mrs. Wright, is a pediatrician who had met with Wright on two occasions in 1978, the second time within four months of the date of the crime. In response to Wright's request for medical information, however, Dr. Sidhu stated that he had not established a physician-patient relationship with Wright and expressed doubts about his ability to assess Wright's mental condition. Dr. Sidhu stated that "I do not know how helpful this information is going to be, because my contact with [Wright] was more on a personal basis, as a guide and a counselor rather than as a physician/patient relationship." *State v. Wright*, Nos. CR-78-37 & CR-78-38, record at 508 (Ark.Cir.Ct. Jan. 1979) (letter from Dr. Sidhu to Wright's counsel admitted into evidence). Sidhu explained further that Wright "seemed to want to talk and I, at different times, sat and listened to him and counseled him on various things, one of which was a strong recommendation to get professional help from a trained psychiatrist." *Id.* The state did not object to the admission of correspondence from Dr. Sidhu, and the trial court permitted both Wright and his mother to testify fully about Wright's meetings with Dr. Sidhu. We agree with the district court that there is little reasonable likelihood that Dr. Sidhu's testimony would have affected the outcome of the trial. *See Valenzuela-Bernal*, 458 U.S. at 868, 102 S.Ct. at 3446-47. Dr. Sidhu was not a psychiatrist and did not treat Wright or evaluate his mental condition. Any error in refusing to compel the attendance of Dr. Sidhu was cured by the testimony of Wright and his mother about the meetings.

The state trial court also refused to order compulsory process of Dr. Kenneth Cole, a psychiatrist who had examined Wright once in 1975 and once in 1977. Dr. Cole had diagnosed Wright as schizophrenic and allegedly ordered Wright committed to the Atascadero State Hospital in California in 1975. Even though the state trial court refused to subpoena Dr. Cole, it gave Wright's counsel the opportunity to admit Dr. Cole's written report into evidence, but Wright's attorney inexplicably declined to do so.[8] While it appears that Dr. Cole had

---

**7.** Prior to the staffing, the state hospital obtains all the information it can about the patient, including medical records from prior treatment. At the staffing, the attending psychiatrist presents his report. The observation notes and lab reports are also reviewed. Next the patient is interviewed by the group. The staff then collectively reaches a conclusion about the patient and issues a diagnosis.

**8.** Wright claims that the state trial court refused to admit Dr. Cole's report, but the record does not support this assertion. On page 606 of the trial record, which Wright cites in support of his contention that the trial court refused to admit Dr. Cole's report, the trial court refused to admit the report at that particular stage of the proceedings, but invited Wright's counsel to proffer the report at the end of the day. The trial court stated that "[t]he court is not going to allow the introduction in evidence of reports by Dr. Cole at this time. If defense counsel wishes to make a proffer, he may make that proffer at the termination of the testimony in this case today." *State v. Wright*, Nos. CR-78-37 & CR-78-38, record at 606 (Ark.Cir.Ct. Jan. 1979). Despite the trial court's invitation, Wright's counsel

Wright committed to a California state hospital, "the final hospital report had declared him sane, and he was returned to the California court system." *Wright,* 590 S.W.2d at 18. Both the Arkansas State Hospital and the Ozark Center had copies of Dr. Cole's report when making their respective evaluations of Wright. Furthermore, the trial court admitted testimony about Dr. Cole's evaluation and allowed Wright's counsel to question professionals from the Arkansas State Hospital and the Ozark Center about Dr. Cole's diagnosis. Under these circumstances, we agree with the district court that Dr. Cole's testimony would have been unlikely to cause the jury to accept Wright's insanity defense.

The state trial court also refused to compel the attendance of David Bourne, the program director at the Atascadero State Hospital in California. Wright does not claim he was treated by Bourne, but claims he talked and worked with Bourne when he functioned as a liaison officer between his therapy group and the staff of Atascadero State Hospital. Bourne appears to have interacted with Wright in an administrative rather than a treatment capacity. Moreover, the final report of the Atascadero State Hospital concluded that Wright was sane. We agree with the district court that the testimony of Bourne would not have significantly contributed to determining whether Wright was suffering from a mental disease or defect at the time he committed the crime in July 1978.

The state trial court also refused to compel the testimony of Eric Wright, Wright's brother. Wright alleges that he had visited his brother Eric while he was suffering from stress during the spring of 1978, and that Eric could offer material evidence about Wright's past mental problems and the stress from which he was suffering.

We agree with the district court that Eric Wright's testimony would have been cumulative because Wright and his mother testified at length about Wright's stress and past mental problems. Moreover, the trial court admitted substantial expert testimony and medical records about Wright's mental condition, and repetitive lay testimony about Wright's condition would have been of marginal probative value at best.

We hold that the district court did not err in finding that Wright's trial was fundamentally fair and that the trial court's refusal to compel the attendance of nonresident witnesses did not violate his sixth amendment right to compulsory process. None of the noncompelled witnesses' testimony was material or vital to Wright's defense. Before standing trial, Wright had the benefit of two mental evaluations that were the most contemporaneous with his commission of the robbery. Wright had the opportunity to admit the reports of the noncompelled medical witnesses into evidence, and the Arkansas State Hospital considered the reports when it conducted its evaluation. The proffered testimony of the noncompelled lay witnesses was either of marginal probative value (Bourne) or cumulative (Eric Wright). "Although we recognize the value of live testimony," *Perry,* 871 F.2d at 1388, Wright has failed to demonstrate that "there is a reasonable likelihood that the [noncompelled] testimony could have affected the judgment of the trier of fact." *Valenzuela–Bernal,* 458 U.S. at 874, 102 S.Ct. at 3450. We therefore conclude that the trial court did not violate Wright's sixth amendment right to compulsory process by refusing to compel the attendance of the nonresident witnesses.[9]

### III.

█ Wright next contends that he was deprived of his sixth amendment right to a

---

failed to proffer the report at the conclusion of the testimony.

**9.** We hold only that Wright's sixth amendment right to compulsory process was not violated by the trial court's refusal to compel the nonresident witnesses. We express no opinion on whether the state trial court could have excluded any of these nonresident witnesses if they had in fact appeared at trial to testify. That

would present a separate question. The trial court recognized the distinction between refusing to compel nonresident witnesses and refusing to allow them to testify if they appeared at trial. For example, the trial court refused to compel the attendance of Mrs. Barbara Wright, but allowed her to testify when she appeared at the trial.

fair and impartial jury when the trial court denied his request for a mistrial after five jurors had read a newspaper article which summarized the first day of trial and noted that Wright faced other unrelated charges. The state responds that the state trial court did not err in refusing to grant a mistrial because the jurors had not been prejudiced by the newspaper article they had read.

■■■ We agree with the district court, and the Arkansas Supreme Court, that the state trial court did not abuse its discretion in refusing to grant a mistrial, and hold that Wright was not deprived of his sixth amendment right to a fair and impartial jury. The mere fact that a juror may have been exposed to adverse publicity does not automatically compel the declaration of a mistrial. *See United States v. Burchinal*, 657 F.2d 985, 996–97 (8th Cir.) (district court's refusal to declare a mistrial not reversible error when court polled jurors and determined that the three jurors who had read news accounts could remain impartial), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981). A trial court's determination of whether a juror is impartial and qualified to be seated is a question of fact entitled to a presumption of correctness under 28 U.S.C. § 2254(d). *Patton v. Yount*, 467 U.S. 1025, 1038, 104 S.Ct. 2885, 2892–93, 81 L.Ed.2d 847 (1984) (*Patton*); *see Hulsey v. Sargent*, 865 F.2d 954, 955–56 (8th Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 291, 107 L.Ed.2d 270 (1989). The record supports the trial court's conclusion that the jurors were not prejudiced by the newspaper article. For the most part, the article merely summarized the testimony and proceedings of the first day. *See Wright*, 590 S.W.2d at 19. Although the article contained the statement that "Wright also faces additional charges of a second count of aggravated robbery, arson, and escape in Boone County," the state trial court found that no juror had read this portion of the account. *Id.* In addition, the state trial court conducted a thorough voir dire of each of the affected jurors, individually, in chambers. This is not a case where the trial court summarily de-

nied a defendant's request for a mistrial after adverse publicity without polling the jurors. The Arkansas Supreme Court found that "[w]hen the judge examined the jurors in chambers concerning possible prejudices, each stated ... that what they had read in the article was covered the previous day in court and nothing they had read would bias or prejudice their opinion as jurors." *Id.* We find no reason to question this assessment. After a careful review of the proceedings below, we are convinced that "there is fair support in the record for the state court's conclusion that the jurors here would be impartial." *Patton*, 467 U.S. at 1038, 104 S.Ct. at 2892–93. We therefore reject Wright's second argument on appeal.

## IV.

■■ Wright's final argument is that the district court erred in holding that the trial court's refusal to conduct a competency hearing was barred from habeas review because Wright did not appeal this issue in the Arkansas courts. Wright admits that he did not raise this issue in the direct appeal of his conviction, but claims that he presented this issue for review in two Rule 37 petitions for post-conviction relief. While Wright admits that he filed his Rule 37 petitions more than three years after the date of his conviction, he contends that lack of competency to stand trial absolutely voids a conviction and may be asserted in a Rule 37 petition despite the passage of the three year statute of limitations. *See Henry v. State*, 288 Ark. 592, 708 S.W.2d 88 (1988). In response, Lockhart contends that the district court did not err in holding that Wright was procedurally barred from raising his competency claim in federal court because he had failed to appeal the issue in the state courts. Assuming we address Wright's fitness, Lockhart contends that there is no question that Wright was competent to stand trial.

We are unpersuaded that the district court erred in finding that Wright was procedurally barred from raising his com-

petency claim. Ark.R.Crim.P. 37 [10] was not intended as a vehicle to allow petitioners to raise questions which might have been raised at trial or on direct appeal. *Neal v. State*, 270 Ark. 442, 605 S.W.2d 421, 424 (1980). When an issue was raised at trial but not argued as a point for reversal on appeal, it has been waived unless it presents a question so fundamental as to render the judgment of conviction absolutely void. *Shockley v. State*, 291 Ark. 251, 724 S.W.2d 156, 157 (1987) (per curiam).

In *Henry*, the Arkansas Supreme Court held that a claim of incompetency to stand trial was not subject to the three year statute of limitations under Rule 37.2(c) because proof of incompetency would render the conviction absolutely void. 708 S.W.2d at 89. The court held that *"[i]f the convicted defendant did not raise the issue of his competence at trial,* he may nevertheless assert his incompetence to stand trial in a petition for post-conviction relief since a person who is incompetent cannot knowingly and intelligently waive his right to have the court determine his capacity to stand trial." *Id.* (emphasis added). We believe that *Henry* does not entitle Wright to raise his competency in a Rule 37 petition after the passage of the three year statute of limitations because he clearly raised his competency to stand trial in the trial court. Wright admits that "[i]t is not denied that Wright's competency was considered prior to trial. He was evaluated by the Arkansas State Hospital and examined by Dr. Jones [of the Ozark Center] for one ... session." Brief for Appellant at 49. Although it does not appear that the trial court made a specific ruling on Wright's competence, it is clear from the record as a whole that the state trial court found Wright competent to stand trial.

Six years after his conviction, Wright filed two *pro se* Rule 37 petitions. The Arkansas Supreme Court returned the first petition as untimely and denied the second petition because Wright's sanity and other related issues were already litigated and decided adversely to him in the trial court. *See Wright v. State*, 1985 WESTLAW 1279, No. CR 79–157 (Ark. Dec. 16, 1985) (per curiam). The state supreme court declined to address Wright's competency claim because he had raised it in the trial court. The Arkansas Supreme Court is the best judge of whether cognizable issues have been raised in a Rule 37 petition and we cannot assume, as Wright suggests, that the state supreme court failed to recognize that Wright's competency claim was a conviction-voiding claim, not subject to the limitations period. Because Wright failed to properly appeal his competency claim and the issue was never addressed by the Arkansas Supreme Court, we hold that the district court did not err in finding that Wright's competency was procedurally barred from habeas corpus review in federal court.

 Even assuming that Wright has preserved the competency claim for our review, we have little trouble in concluding that Wright was competent to stand trial. We agree with Wright that it is a violation of due process to convict a person while he or she is legally incompetent. *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct. 836, 838, 15 L.Ed.2d 815 (1966). The test of competency is whether the accused has sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding and whether he or she has a rational and factual understanding of the proceedings against him or her. *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960) (per curiam); *Davis v. Wyrick*, 766 F.2d 1197, 1201 (8th Cir.1985), *cert. denied*, 475 U.S. 1020, 106 S.Ct. 1209, 89 L.Ed.2d 322 (1986). The report issued by the Arkansas State Hospital concluded that Wright was able to assist in his own defense and that he was able to understand the proceedings against him. Dr. Whitehead, a psychiatrist at the Arkansas State Hospital, also testified that Wright was able to understand the proceedings against

---

**10.** Rule 37 was abolished by a May 30, 1989 Per Curiam of the Arkansas Supreme Court. The Per Curiam provided that "persons who have been convicted and sentenced during the time *the rule was in effect may proceed in accordance with the rule as it existed prior to that date." See* Ark.R.Crim.P. 37.1 Publisher's Notes.

him and to assist effectively in his own defense. We find no evidence in the record that supports Wright's assertion that he was not fit to stand trial. We therefore hold that Wright was competent to stand trial and his conviction did not violate due process.

## CONCLUSION

To summarize, we hold that (1) the district court did not err in holding Wright was not deprived of his sixth amendment right to compulsory process by the state trial court's refusal to compel or order depositions of the nonresident witnesses, (2) the state trial court did not deny Wright a fair trial by refusing to grant a mistrial after five jurors read part of a newspaper article about the trial, and (3) the district court did not err in holding that Wright's competency claim was procedurally barred.

Accordingly, the order of the district court is affirmed.