Bruce Lee ROWBOTTOM *v.* STATE of Arkansas

CR 96-956                                    938 S.W.2d 224

Supreme Court of Arkansas
Opinion delivered January 21, 1997

*David B. Fuller*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Vada Berger*, Asst. Att'y Gen., for appellee.

ANNABELLE CLINTON IMBER, Justice. A jury found the appellant, Bruce Lee Rowbottom, guilty of several crimes relating to possession of drugs and firearms. As a habitual offender,

Rowbottom was sentenced to a concurrent term of forty-five years' imprisonment. Rowbottom represented himself at trial with the assistance of a standby attorney appointed by the court. On appeal, Rowbottom claims that he was unconstitutionally deprived access to a law library, and that the court failed to subpoena a material witness in his favor. We affirm for the reasons stated below.

On July 23, 1995, a police officer in Gravette, Arkansas, spotted Rowbottom driving a white Dodge van without a license plate. Catherine Gregory, Rowbottom's girlfriend, and the couple's three-month-old child were riding inside the van. As the officer approached the vehicle, Rowbottom sped away, and the officer gave chase. During a high-speed pursuit, Rowbottom threw out of the passenger window a box containing marijuana, methamphetamine, and drug paraphernalia. In addition, the officer observed Rowbottom repeatedly striking Catherine Gregory as the van sped down Highway 59. The officer eventually lost sight of the vehicle.

Soon thereafter, Rowbottom crashed the van into a wooded area and escaped on foot. Gregory fled to a nearby residence and notified the police that Rowbottom had drugs and guns inside the van. The police apprehended Rowbottom and found two hand guns inside the van as reported by Gregory.

Rowbottom was charged with possession of marijuana and methamphetamine with the intent to deliver, simultaneous possession of drugs and firearms, possession of drug paraphernalia, and being a felon in possession of a firearm. Gregory was not charged with any crimes in exchange for her testimony against Rowbottom.

Rowbottom chose to represent himself at his trial which took place in the Benton County Circuit Court. The jury found Rowbottom guilty of all charges and sentenced him as a habitual offender to a concurrent term of forty-five years' imprisonment.

### 1. Access to a law library.

During his first appearance before the trial court on August 28, 1995, Rowbottom stated that he wished to represent himself at trial. After warning Rowbottom about the shortcomings of *pro se* representation, the trial court granted Rowbottom's request and appointed standby counsel.

On numerous occasions, Rowbottom asked the court to grant him physical access to a law library. First, Rowbottom claimed that he was not getting necessary legal materials such as envelopes and a notary seal. The Benton County Sheriff's Department verified that it gave Rowbottom one envelope a week,[1] and that it provided notary service as soon as possible. The standby attorney added that Rowbottom had not requested these materials from him. Accordingly, the trial court denied the motion.

During a suppression hearing, Rowbottom argued that he could not explain why he felt that a witness was hostile because the court's failure to grant him access to a law library prevented him from researching the issue. Nevertheless, Rowbottom cited one legal authority in support of his proposition. The record is unclear as to whether Rowbottom asked his standby counsel to assist him in the matter.

Later in the suppression hearing, Rowbottom renewed his request for access to a law library on the basis of his constitutional right to access to the courts. Standby counsel explained that he had not yet researched the constitutional issue because he had been assisting Rowbottom with the specific suppression issues which were the subject of that day's hearing. In addition, Rowbottom conceded that he needed library access to prepare for a paternity suit and a federal habeas petition, neither of which were related to his criminal case before the Benton County Circuit Court. The trial court delayed ruling on the issue until Rowbottom and standby counsel had a chance to research the matter.

---

[1] One envelope per week is sufficient to protect an indigent inmate's constitutional right to access to the courts. *Hershberger v. Wheeler*, 33 F.3d 955 (8th Cir. 1994).

Finally, during a pretrial conference, Rowbottom renewed his motion for access to a library and declared:

> I believe that I am being denied timely legal assistance due to the fact that it's almost impossible for a person to have an associate counsel, you run their legs off, and in a case like this or any case for that matter and also I have got several other cases that are pending in several other courts which Mr. Fuller, it would be ludicrous for me to ask him to provide me with that amount of material. . . .

The trial court found that standby counsel was adequately assisting Rowbottom and advised him to concentrate his efforts on this criminal case which was coming to trial shortly. Rowbottom now appeals the trial court's pretrial order denying him physical access to a law library.

■ On appeal, Rowbottom asserts that he has an absolute, constitutional right to access to a law library under *Bounds v. Smith*, 430 U.S. 817 (1977). We disagree. In *Bounds*, the United States Supreme Court established that an inmate has a constitutional right to access to the court which can be protected by *either*

> providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law.

*Id.* (emphasis added). Justice Thurgood Marshall further emphasized in *Bounds* that while either alternative is acceptable, the standby counsel option was often preferable because it would

> not only result in more efficient and skillful handling of prisoner cases, but also [would] avoid the disciplinary problems associated with writ writers.

*Id.* Thus, according to *Bounds*, the court is free to appoint standby counsel instead of granting an inmate access to a law library.

The Arkansas Supreme Court addressed the *Bounds* decision in *Prince v. State*, 304 Ark. 692, 805 S.W.2d 46 (1991), *cert. denied*, 114 S.Ct. 1857 (1994). Although this court found that the issue was procedurally barred, it stated in *dicta* that under *Bounds* an inmate's constitutional right to access to the courts could be satisfied by providing standby counsel or access to a law library. *Id.*

■ The United States Supreme Court recently held in *Lewis v. Casey*, 116 S. Ct. 2174, 2180 (1996), that *Bounds* does not require courts to grant an inmate physical access to a law library so long as some other acceptable and effective method of access to the courts is provided. According to *Lewis*, an inmate must demonstrate how a state's chosen method failed to provide him or her with access to the courts. *Id.* Moreover, the Supreme Court explained in *Lewis* that:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.*, at 2182 (emphasis in the original).

Rowbottom has failed to demonstrate how the appointment of standby counsel deprived him of his right to access to the courts as required by *Lewis*. First, the sheriff's department verified that it provided Rowbottom with envelopes and a notary seal. Second, standby counsel explained that he was assisting Rowbottom with legal research on the few occasions when Rowbottom asked for assistance. Finally, and most importantly, Rowbottom admitted he was utilizing standby counsel to research issues in other cases. Therefore, any alleged shortcomings in the appointment of standby counsel were due to Rowbottom's own failure to use or properly use the assistance provided to him.

Finally, Rowbottom attempts to distinguish his case from *United States v. West*, 557 F.2d 151 (8th Cir. 1977), in which the Eighth Circuit Court of Appeals found that appointment of standby counsel adequately assured a *pro se* criminal defendant his right to access to the courts. Specifically, Rowbottom argues that unlike *West* he was not a suicide or flight risk, and therefore should have been granted access to a law library. This argument presupposes that the court must choose access to a law library over appointment of standby counsel when the former is feasible.

Clearly, neither *Bounds* nor *Lewis* supports such a proposition. Rather, both cases establish that the court can choose either method, or some other method, so long as it adequately protects the inmate's right to access to the courts. Rowbottom's assertion that access to a law library must be granted when feasible is simply without merit.

■ We therefore conclude that the trial court was free to appoint standby counsel instead of granting access to a law library. We further find that Rowbottom has failed to demonstrate how the appointment of standby counsel in this case deprived him of his right to access to the courts.

### 2. Attendance of material witness under Ark. Code Ann. § 16-43-403 (Repl. 1994).

According to Rowbottom, Catherine Gregory's testimony was the most damaging evidence against him. Rowbottom tried to prevent Catherine from testifying by asserting that she was his common law wife under Oklahoma law where the couple resided. However, Catherine explained to the trial court that she was separated from, but still legally married to, Dan Gregory, who lived in Missouri. The trial court concluded that under these facts no common law marriage could exist between Catherine and Rowbottom, and thus allowed Catherine to testify despite Rowbottom's claim of privileged communications.

Prior to trial, Rowbottom asked the State to subpoena Catherine's husband, Dan Gregory. Rowbottom did not tell either the State or his standby counsel why Dan Gregory's testimony was material. Because the subpoena did not assert facts demonstrating the materiality of Dan Gregory's testimony, the Missouri court denied the subpoena.

At the beginning of the trial, Rowbottom again requested Dan Gregory's attendance claiming that he would testify as to Catherine's character and habits. The trial court found that the State had done all it could to obtain the witness, and thus he refused to delay the trial.

On the third day of trial, Catherine Gregory took the stand and again Rowbottom demanded the presence of Dan Gregory. For the first time, Rowbottom explained to the trial judge that Dan Gregory was a material fact witness because he could establish that he and Catherine had been separated for nine months.[2] The trial court explained to Rowbottom that he might have obtained the subpoena if he had given this information to standby counsel or the State at an earlier date. Because Rowbottom failed to do so, the trial court held that it was too late to subpoena the witness three days into the trial.

■ On appeal, Rowbottom first contends that the trial court's failure to compel Dan Gregory's attendance at trial resulted in an unconstitutional deprivation of his right to a fair trial. This court has repeatedly held that even constitutional arguments must be raised before the trial court in order to properly preserve the issue. *Mayo v. State*, 324 Ark. 328, 920 S.W.2d 843 (1996). Rowbottom failed to do so, and thus he is precluded from raising the issue for the first time on appeal.

Rowbottom also claims that the court should have compelled Dan Gregory's attendance pursuant to Ark. Code Ann. § 16-43-403 (Repl. 1994), which allows a trial judge to certify to another state court the facts which cause the witness to be material and the number of days the witness will be required to testify. There is no absolute right to the certification process created by Ark. Code Ann. § 16-43-403, but rather the matter is within the discretion of the trial judge. *Logan v. State*, 300 Ark. 35, 776 S.W.2d 341 (1989); *Wright v. State*, 267 Ark. 264, 590 S.W.2d 15 (1979).

■ Rowbottom initially refused to explain why Dan Gregory was a material witness. In fact, Rowbottom told the court on the first day of trial that Gregory was a character witness instead of a fact witness. Rowbottom simply failed to support his claim that Gregory was a material witness, and thus the judge did not abuse

---

[2] Rowbottom's argument appears to be that if he could prove the parties were separated, then he could prove the existence of a common law marriage between him and Catherine Gregory. This argument is erroneous because Catherine Gregory would not have the capacity to enter into a common law marriage unless she was legally divorced, not separated, from Dan Gregory.

his discretion when he refused to compel his attendance. *See,* *Henry v. State,* 278 Ark. 478, 647 S.W.2d 419 (1983), *cert. denied,* 464 U.S. 835 (1983).

On the third day of trial, Rowbottom finally explained to the judge that Dan Gregory was a material witness because he could supply facts to support his common law marriage argument. In *Logan, supra,* this court affirmed a trial judge's decision that a request to compel a witness made two days prior to trial was untimely. If two days prior to trial is untimely, then three days into trial is certainly untimely. In any event, Dan Gregory would not have been a material witness because Dan and Catherine Gregory, although separated, were legally married and Catherine would not have the capacity to enter into a common law marriage.

We therefore conclude that the trial judge did not abuse his discretion when he denied Rowbottom's request to compel Dan Gregory's attendance at trial.

Affirmed.

CORBIN, J., not participating.