Richard Ray **MIRICH**, Appellant
(Defendant below),

v.

The **STATE** of Wyoming, Appellee
(Plaintiff below).

No. 5005.

Supreme Court of Wyoming.

April 20, 1979.

Michael K. Shoumaker, Sheridan, signed the brief for appellant and appeared in oral argument on his behalf.

John J. Rooney, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Michael H. Schilling, Asst. Atty. Gen. and Sandra K. Dunn, Legal Intern, signed the brief of appellee. Mr. Schilling appeared in oral argument on its behalf.

Before RAPER, C. J., McCLINTOCK, THOMAS, and ROSE, JJ., and GUTHRIE, J., Retired.*

RAPER, Chief Justice.

The appellant-defendant appeals from the judgment and sentence of the district

court finding him guilty of burglary in violation of § 6–129, W.S.1957, now § 6–7–201, W.S.1977.[1] He asserts as errors: "No evidence was presented [at trial] to establish an intent to steal", and the district court's failure "to instruct on the relationship of the evidence to a lesser offense increased the significance of the lack of evidence of intent to steal."

We shall affirm.

The defendant challenges the sufficiency of the evidence. We approach this assertion of error in light of our long-established rule that, when a defendant charges a lack of sufficient evidence to sustain the jury verdict, it is the duty of the supreme court to decide whether there is sufficient evidence on which the jury could base its verdict and, in the discharge of that duty, this court must view the evidence in the light most favorable to the State. *Downs v. State*, Wyo.1978, 581 P.2d 610; *Smith v. State*, Wyo.1977, 564 P.2d 1194. In determining the sufficiency of the evidence on appeal, the test is not whether the evidence establishes guilt beyond a reasonable doubt for members of the supreme court, but rather whether the evidence of record is sufficient to form a basis for reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in a light most favorable to the State. *Nisonger v. State*, Wyo.1978, 581 P.2d 1094. With these rules in mind, we examine the evidence presented in this case.

Arthur Stroup testified that at about 10:00 o'clock on the night of Sunday, February 5, 1978, he was walking home and in so doing passed by Loring's Phillips 66 Service Station. He observed a "person" looking into the station through a window:

---

* ROONEY, J., having recused himself from participation in this case, GUTHRIE, J., Retired, was assigned, having been retained in active judicial service pursuant to § 5, Art. V, Wyoming Constitution and § 5–1–106(f), W.S.1977, by order of the court entered on January 1, 1979.

1. In pertinent part:

"§ 6–7–201

"(a) Whoever, intentionally enters, or attempts to enter, any of the following places without the consent of the person in lawful possession and with intent to steal or commit a felony therein may be imprisoned not more than fourteen (14) years:

"(i) any building or dwelling; * * *"

" * * * I didn't think much of it and I looked again and it *appeared that he had ducked down* beside an object or something where the light didn't catch him." (Emphasis added.)

Stroup further testified that the person he saw was wearing a dark stocking cap, light colored jacket, and dark pants. Stroup then proceeded to the police station to report what he had observed. This witness was at the scene with the police when the defendant was apprehended. When asked if he could identify a jacket which was introduced in evidence as similar to the one the defendant was wearing, the witness testified, "I would say the defendant was wearing it."

Robert Loring, the owner of the service station in question, testified that there were two broken windows in his station when he was called there by the police which had been intact when he left the station at about 6:30 p. m. on Saturday, February 4, 1978. He told the jury that defendant was his brother-in-law, the relationship was casual, and that he had been in the station on several occasions ("a half dozen, ten."). He further testified that he had not given defendant any consent to enter the building on the night of the crime. The broken windows, about twenty feet apart, were immediately adjacent to handles with which the windows could have been opened if not painted shut; and Loring doubted that they could have been opened, though he observed that one handle had been moved. Loring stated that there was a small amount of change (no bills) in cash, valuable merchandise and vehicles inside the station.

Glen R. Wright, a Sheridan police officer, testified that he responded to a call resulting from the report made by Mr. Stroup: " * * * I pulled around from the east on Mandel and when I cleared the building, cleared the corner of the building, I looked immediately to my right and saw a subject located near the north-most window and when he saw me, *he ducked*

*down.* I believe there was a car there. *I lost track of him when he did duck down until I cleared the car and then he was still ducked down beneath the window."* (Emphasis added.)

Officer Wright then pulled up behind the station, exited his car, and told the defendant to come to the front of the patrol car whereupon the officer searched him. A small sliver of glass was detected on the defendant's coat which was introduced in evidence. Officer Wright stated that other bits of glass, "not enough to pick up out of there," were on defendant's clothing. A pair of gloves worn by the defendant at the time of his arrest were introduced in evidence. The police officer detected blood and slivers of glass on the gloves. The officer further testified that he noted a small speck of fresh blood on one of the window sills and that the defendant had a small cut on his forearm. A photograph, taken of defendant on the night of his arrest depicting the cut, was introduced into evidence. The officer also stated that there was blood on the defendant's jacket and coveralls. Officer Wright stated that when he arrived on the scene, defendant " * * * had his head and shoulders on the interior of the window and he appeared to me attempting to get in."

■ The defendant also testified. He stated that he observed the broken windows and was looking inside to see what might have been going on and that he was " * * * trying to help, not hurt." The defendant denied ever "ducking" but at one point in his cross-examination indicated that his actions, which had been characterized as "ducking", were a result of the excitement of the situation. He stated that he was not ducking but was letting himself down and away from the window where he was discovered when the police officer arrived.[2]

■ It is clear from the statutory scheme set out in the laws of Wyoming that burglary and criminal trespass are, by design,

---

2. This evidence is, of course, in conflict with that presented by the State and we point it out only to complete the picture of the testimony

presented at trial. The jury could, and obviously did, disbelieve the defendant and accepted the State's version. *Downs v. State,* supra.

separate and distinct violations of the law. The penalties are quite diverse. The essential difference between the two crimes, and the only matter which concerns us here, is the element of specific "intent [3] to steal or commit a felony therein", found in the burglary statute. It is conceded that there is sufficient evidence from which a jury could infer that a criminal trespass had taken place and that the defendant, despite his protestations of innocence, had committed that crime.

■■■ The charge against defendant was breaking and entering with intent to steal (burglary). It is indisputable that the intent to steal is just as essential for the prosecution to prove with competent evidence as is the breaking and entering. *Stuebgen v. State*, Wyo.1976, 548 P.2d 870, 879. No issue is raised in regard to the given instruction on specific intent, and we are concerned only with whether there was evidence from which the jury could reasonably determine the intent to steal. Evidence was presented at trial which can be said to go to the issue of intent to steal, including testimony of two witnesses to the effect that when they came upon the scene the defendant appeared to duck down. Flight or hiding will, under the proper circumstances, be sufficient evidence from which a jury might properly infer an intent to steal. *State v. Liston*, 1974, 95 Idaho 849, 521 P.2d 1028; 12 C.J.S. Burglary, § 55; and see generally cases digested at West's Digest System, Burglary, Key Number 41(3). It would not be possible or fruitful for us to exhaustively list all the circumstances from which a jury might properly have inferred the intent to steal. Suffice it to say they are numerous, various, and the quantum of proof required necessarily depends upon the totality of the circumstances presented. In this case the defendant was caught "red-handed" in the sense that he had his head and shoulders inside the building.[4]

■ There was more than that, however. The law is well settled and widespread that where one breaks into the property of another in the nighttime, an inference may be drawn that he did so with the intent to commit larceny. A reasonable mind recognizes that people do not usually break into and enter the building of another under the shroud of darkness with innocent intent and that the most usual intent is to steal. *Garcia v. People*, 1970, 172 Colo. 329, 473 P.2d 169; *State v. Allnutt* (1968), 261 Iowa 897, 156 N.W.2d 266; *State v. Hopkins*, 1961, 11 Utah 2d 363, 359 P.2d 486; *State v. Gatewood*, 1950, 169 Kan. 679, 221 P.2d 392. That intent is more apparent when accompanied by an attempt at concealment. When a trier of fact draws reasonable inferences from the evidence before it, a defendant has little room to successfully complain to this court that the trier of fact has drawn those inferences. Direct evidence to prove intent is not necessary. *Delmont v. State*, 1907, 15 Wyo. 271, 88 P. 623, reh. den. 15 Wyo. 271, 88 P. 1102. Proof of intent is not a precise process.

■■ There is other evidence of intent. Defendant had been in the building and knew its contents. Knowledge of what a structure contains, coupled with an attempt to enter it, supports a rational inference of intent to steal whatever is of value within the building. *Hebb v. State*, 1970, 10 Md. App. 145, 268 A.2d 578 (cert. den.). The fact that nothing was taken from the building does not destroy the inference of intent to steal at the time of entry. *State v. Witte*, 1968, 280 Minn. 116, 158 N.W.2d 266.

There was evidence from which the jury could infer the general intent to criminally

---

3. A specific intent instruction was given to the jury and no issue is raised in regard to this instruction. For a thorough and enlightening discussion of specific intent instructions and specific intent, see *Brown v. State*, Wyo.1979, 590 P.2d 1312; *Vigil v. State*, Wyo.1977, 563 P.2d 1344; and *Stuebgen v. State*, infra.

4. An unlawful entry is made by putting through the place broken a hand, the foot, or any instrument with which it is intended to commit a felony. *State v. Gatewood*, infra; 13 Am. Jur.2d Burglary, § 10; 2 Whartons Criminal Law and Procedure, Anderson, § 421. An unsuccessful attempt to break open an entry with intent to steal is evidence of burglary. *State v. Lindsay*, 1957, 77 Wyo. 410, 317 P.2d 506.

trespass,[5] but they elected to find the defendant guilty of the primary crime, with the added element of specific intent which was present.

■ We see no basis for defendant's claim that the trial judge did not explain the relationship between burglary and criminal trespass. Nor do we see in the record any offer of proper instructions which would have improved upon those given by the court. The defendant's offered-and-refused Instruction A, which he urges should have been given by the court, would have directed the jury to return a verdict of guilty of the lesser included offense, even in the face of obviously sufficient evidence of intent to steal. An acceptable jury instruction to lead the jury from consideration of the primary offense into consideration of the lesser included one is 1.301, Wyoming Pattern Jury Instructions-Criminal (W.P.J. I.C.):

"If you are not satisfied beyond a reasonable doubt that the defendant is guilty of the offense charged, he may, however, be found guilty of any lesser offense, the commission of which is necessarily included in the offense charged, if the evidence is sufficient to establish his guilt of such lesser offense beyond a reasonable doubt.

"The offense of [＿＿＿＿＿], with which the defendant is charged, includes the lesser offenses of [＿＿＿＿＿] [and also includes the lesser offense(s) of ＿＿＿＿＿]."

Affirmed.

---

5. § 6–10–103, W.S.1977 in pertinent part:
   "Whoever intentionally, knowingly and wrongfully enters into any locked or sealed dwelling house, vehicle or any building without permission of the owner or occupant, or his agent or servant, or without authority of law, is guilty of criminal trespass except as hereafter provided. * * *"
   Defendant was charged under the 1957 statutory citation, § 6–130, W.S.1957, for breaking and entering. There is no longer a crime of "breaking and entering"; the equivalent crime is now referred to as "criminal trespass". Section 6–130, W.S.1957, was declared unconstitutional in 1976. *State v. Stern*, Wyo.1974, 526 P.2d 344. The statute was null and void and was repealed in 1976 and replaced by § 6–226.1 (§§ 1 and 2, Ch. 22, S.L.Wyo.1976), now § 6–10–103. Inattention to such a basic matter reflects adversely on the criminal justice system. It is noted, however, that the trial judge dismissed the charge of breaking and entering on the date of trial but instructed the jury on the crime of criminal trespass, as an included offense, and set out the pertinent parts of § 6–10–103 in substantially the language of the statute.