Tomi E. JENNINGS, Jr., Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 98–264.

Supreme Court of Wyoming.

April 27, 2000.

*See also*, 806 P.2d 1299.

Representing Appellant:  Pro se.

Representing Appellee: Gay Woodhouse, Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Georgia L. Tibbetts, Senior Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

LEHMAN, Chief Justice.

Tomi Edward Jennings Jr., acting *pro se*, appeals his conviction for escape from official detention in violation of Wyo. Stat. Ann. §§ 6–5–206(a)(i) (Lexis 1999) and 7–18–112 (Michie June 1987 Repl.).[1] Finding that none of Jennings' asserted constitutional violations merit reversal, we affirm his conviction. However, we remand to the district court for the limited purpose of directing the district court to amend the judgment and sentence with respect to the credit due Jennings for time served in presentence incarceration.

### ISSUES

Jennings presents seven issues for review:

1. Whether the trial court erred in denying the *pro se* Appellant legal access and legal materials?

2. Whether the trial court erred in taking the *pro se* Appellant to court proceedings without first notifying the *pro se* Appellant of such court proceedings?

3. Whether the trial court erred in refusing African Americans to serve in the jury trial when *pro se* Appellant who is African American did request to trial court he wanted members of his race serving in his jury trial?

4. Whether the trial court erred in denying the *pro se* Appellant his constitutional right to a speedy trial?

5. Whether the trial court erred in computing the *pro se* Appellant's credit for time served while detained by the State of Wyoming?

6. Whether the trial court erred in denying full and complete records of all the court proceedings when such was requested by *pro se* Appellant?

7. Whether the trial court erred in unlawfully frustrating *pro se* Appellant's defense of entrapment?

The State rephrases those issues as follows:

I. Did the district court improperly deny Appellant access to legal materials or infringe on Appellant's ability to defend against the criminal charge?

II. Were Appellant's equal protection rights violated by the absence of African Americans from his jury panel?

III. Was Appellant denied his right to a speedy trial?

IV. Is Appellant entitled to credit on his sentence for the time spent in confinement in the State of Washington for an unrelated crime?

V. Has Appellant been improperly denied full and complete copies of transcripts from the criminal proceeding?

VI. Did the district court inhibit Appellant's ability to put on an entrapment defense?

### FACTS

In late 1989, Jennings was convicted in Laramie County, Wyoming, on three counts of burglary. He was sentenced in January 1990, to three concurrent terms of five to ten years in the Wyoming State Penitentiary. *Jennings v. State*, 806 P.2d 1299, 1302 (Wyo. 1991). After serving less than four years at the penitentiary, Jennings was transferred to Community Alternatives of Casper (CAC), where he was to remain until he completed his sentence. On October 24, 1994, Jennings signed out of CAC to go to work and did not return.

On November 22, 1994, a warrant was issued for Jennings' arrest on a charge of escape from official detention in violation of Wyo. Stat. Ann. §§ 6–5–206(a)(i) and 7–18–112. Three years later, he was located in the state of Washington where he was serving a

1. The escape occurred on or about October 24, 1994; hence, Jennings was charged with violations of the statutes in effect on that date.

prison term for a burglary conviction in that state. Documentation provided to this court by Jennings indicates that upon being located in Walla Walla, Washington, he was placed under arrest on November 12, 1997, as a fugitive from justice from Wyoming. Although Jennings' burglary conviction was overturned by a Washington appeals court, he was held in custody by Washington authorities after November 12, 1997, for extradition to Wyoming on the escape charge. Following extradition proceedings, Jennings was released to Wyoming authorities on January 2, 1998.

Jennings was brought before the court in Wyoming for an initial appearance on January 5, 1998. A preliminary hearing was held on January 13, 1998, at which time Jennings was bound over to district court. He was arraigned in district court on February 18, 1998. A jury trial was held on May 18 and 19, 1998, and Jennings was found guilty on the escape charge. On July 1, 1998, he was sentenced to six to nine years in the Wyoming State Penitentiary with credit for 133 days of presentence incarceration time. Jennings appeals from his conviction and sentence. Throughout the proceedings in district court and in this court, Jennings has appeared *pro se*.

## DISCUSSION

### Access to Legal Resources

Jennings contends he was denied adequate access to legal materials. Jennings opted to proceed *pro se,* and the district court cautioned him about the risks of such self-representation throughout the proceedings. The district court appointed standby counsel for Jennings. Jennings acquiesced in the use of the standby counsel, and the record reflects that Jennings did consult with his standby counsel. The district court complied in every respect with the directives we set out in *Van Riper v. State,* 882 P.2d 230, 234–36 (Wyo.1994). When a defendant makes a decision to manage his own case, he relinquishes many of the traditional benefits associated with the right to counsel. *State v. Rosales,* 3 Neb.App. 26, 521 N.W.2d 385, 392 (1994). The district court's appointment of standby counsel availed Jennings of the ma-

terials he claims to have been denied. *See Rowbottom v. State,* 327 Ark. 79, 938 S.W.2d 224, 226–27 (1997); *State v. Nicholas,* 55 Wash.App. 261, 776 P.2d 1385, 1389 (1989); *Wilkie v. State,* 98 Nev. 192, 644 P.2d 508, 509 (1982); *State v. Simon,* 297 N.W.2d 206, 207–210 (Iowa 1980); *and see generally,* John S. Herbrand, Annotation, *Accused's Right to represent Himself in State Criminal Proceeding—Modern State Cases,* 98 A.L.R.3d 13 § 25 (1980 and 1999 Supp.). At the motions hearing held on Friday, May 15, 1998, Jennings indicated that he was ready for his trial which was to begin on Monday, May 18, 1998. At the beginning of trial, Jennings was asked again if he was ready to proceed; he responded, "Yes, I am, Your Honor." Jennings' performance throughout the proceedings evidenced his familiarity with the courtroom and criminal proceedings. We find no error in this regard.

### Notice of Hearings

Jennings next alleges that the district court violated his right to due process by requiring him to attend hearings without adequate notice. He points specifically to four motion hearings held between his arraignment and trial. Three of the hearings were set for the sole purpose of hearing argument on the numerous pretrial motions filed by Jennings. In some cases, these hearings concerned motions extensively researched, written, and filed by Jennings not once, but two or three times in the months, weeks, or days before the hearing. In other cases, the hearings concerned motions filed by Jennings after a hearing was scheduled expressly for the purpose of hearing "all pending motions." In still other cases, the hearings were set in response to motions filed by Jennings complaining that his motions were not being heard.

The record clearly reflects that Jennings had considerable time to prepare his numerous motions. These motions which Jennings so thoroughly prepared were the subject of the hearings set by the court. It is not as if hearings were being scheduled without notice to Jennings on issues with which he was unfamiliar. Given these fac-

tors and the fact that some of the hearings were scheduled in response to Jennings' complaints that his motions were not being heard, we find no merit in his claim that he received insufficient notice of these hearings.

■ The fourth hearing about which Jennings complains was scheduled to hear argument on the motions to quash subpoenas filed in response to Jennings' efforts to subpoena a number of state officials to testify at trial.[2] The precipes giving rise to the motions to quash were filed by Jennings on March 11, 1998. The first motion to quash was filed two weeks later, and similar motions followed over the next couple of weeks. On April 13, 1998, the State filed a request for setting on the motions to quash subpoenas. With the then-existing trial date of April 20 looming only one week away, the district court set the motions to quash for hearing on April 16. By that time, Jennings had been in possession of and presumably had a chance to review the motions to quash for several weeks. Under the circumstances, we find no merit in Jennings' claim that he received inadequate notice of this hearing.

### Jury Selection

Jennings next alleges that he was denied equal protection because no African Americans served on his jury. The one African American on the prospective panel was not called, and the jury that was ultimately selected to hear the case did not include any African Americans. Jennings objected to the jury as impaneled and requested that he be allowed to have African Americans on the jury. The district court noted the objection and allowed the case to go forward with the jury selected.

Jennings' argument in this case is similar to the argument he made previously in *Jennings*, 806 P.2d at 1307. There, we cited the rule that the Equal Protection Clause of the Fourteenth Amendment protects defendants from *purposeful* exclusion from a jury of members of his race. *Id.* Because Jennings

presented no evidence suggesting purposeful exclusion of African Americans from his jury and instead complained only that there were no African Americans from which to choose, we said his claim was not cognizable.

■ Here, the argument is only slightly different in that the one African American on the prospective panel was not called, and for that reason, there were no African Americans on the venire from which to choose. Jennings offers no evidence or argument that the one African American was purposefully excluded from his jury. Under an equal protection analysis, therefore, Jennings has failed to establish his claim.

■ Jennings likewise has failed to establish his claim under the "fair cross section" provision of the Sixth Amendment to the United States Constitution. To establish a prima facie violation of the "fair cross section" provision, Jennings was required to show that: 1) the group allegedly excluded from the venire is a distinctive group in the community; 2) the group's representation in a venire is not fair and reasonable in relation to its numbers in the community; and 3) the group's underrepresentation in a venire is due to systematic exclusion attributable to the process by which venire members are selected. *Espinoza v. State*, 969 P.2d 542, 547 (Wyo.1998). Jennings has made no showing whatsoever that African Americans are a distinctive group in Natrona County, that the group's representation on Natrona County juries is unfair and unreasonable in relation to its numbers in the county, or that the underrepresentation of African Americans on Natrona County juries is due to systematic exclusion attributable to the process by which venire members are selected in the county. Under these circumstances, the district court was correct in allowing the case to proceed before the jury selected.

### Speedy Trial

■ Jennings was arraigned in district court on the charge of escape on February

---

2. Among the individuals Jennings sought to subpoena as witnesses at trial were the Governor of the State of Wyoming, the Attorney General for the State of Wyoming, a Wyoming District Court Judge, the Clerk of the Wyoming Supreme Court, the Clerk of the United States District Court for the District of Wyoming, the Public Defender for the State of Wyoming, and several Assistant Public Defenders for the State of Wyoming.

18, 1998. The trial was held on May 18, 1998, 89 days later. Under W.R.Cr.P. 48(b)(2), which requires criminal charges to be brought to trial within 120 days following arraignment, there was no speedy trial violation. Jennings alleges, however, that his right to a speedy trial was violated despite compliance with Rule 48.

■ We have said it is possible for a defendant to be tried within the time limits of Rule 48 and still suffer a constitutional deprivation due to delay which seriously prejudices his defense. *Kleinschmidt v. State*, 913 P.2d 438, 440 (Wyo.1996). For that reason, Rule 48 addresses only part of any constitutional speedy trial question. *Id.* We also apply the four-part test articulated by the United States Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), to determine whether a speedy trial right has been violated. Under that test, we balance: 1) the length of delay; 2) the reason for delay; 3) the defendant's assertion of his right; and 4) the prejudice to the defendant. *Sides v. State*, 963 P.2d 227, 229 (Wyo.1998); *Doyle v. State*, 954 P.2d 969, 975–76 (Wyo.1998). The determinative dynamic in our inquiry is whether the delay in bringing the accused to trial was unreasonable, that is, whether it substantially impaired the right of the accused to a fair trial. *Wehr v. State*, 841 P.2d 104, 111 (Wyo. 1992).

■ In applying the four-part test, the time for speedy trial starts to run when the defendant is arrested or when the information is filed. *Springfield v. State*, 860 P.2d 435, 451 (Wyo.1993); *Yung v. State*, 906 P.2d 1028, 1032 (Wyo.1995). Jennings claims he was arrested on November 12, 1997. The record is less than clear on this point;[3] but, accepting Jennings' claim as fact, the length of the delay from arrest until trial on May 18, 1998, was 187 days. "[W]hen the length of delay is neither 'presumptively prejudicial' nor significantly long, no further analysis is warranted." *McDaniel v. State*, 945 P.2d

1186, 1188 (Wyo.1997). The 187–day delay at issue here falls far short of the 18 months we deemed presumptively prejudicial in *Harvey v. State*, 774 P.2d 87, 97 (Wyo.1989) and may not warrant further analysis. Nevertheless, we turn to the second prong of the *Barker* test, the reason for the delay.

■ The first 52 days between Jennings' arrest and his trial are attributable directly to the extradition proceedings necessitated by Jennings having left the state of Wyoming following his unlawful departure from CAC. Delays attributable to the defendant are deducted from the equation. *McDaniel*, 945 P.2d at 1189. After deducting the 52 days attributable to the extradition proceedings, only 135 days passed between the date of formal execution of the arrest warrant in Wyoming and trial. Of those 135 days, a significant number are directly attributable to the numerous motions filed by Jennings, motions requiring the district court to set aside time for hearings, deliberation, and preparation of written orders. It is impossible to attribute a precise number of days to Jennings' numerous motions, but our review of the record convinces us that the motions contributed significantly to the 135–day delay between Jennings' arrest and trial.

Also of significance to the delay are the numerous subpoenas Jennings sought to have issued compelling the testimony at his trial of individuals with no knowledge relevant to the issues in the case. This action on the part of Jennings necessitated the filing of numerous motions to quash the subpoenas which, in turn, necessitated a hearing and written order by the district court. Based upon a thorough review of the record, we have no difficulty concluding that a significant portion of the 135–day delay is directly attributable to the actions of Jennings. Deducting even as few as 10 days for the delays attributable to Jennings' motions and subpoenas leaves only 125 days between the date of arrest and trial.

**3.** While there is documentation which seems to support Jennings' assertion that he was arrested on November 12, 1997, the record also contains a warrant for Jennings' arrest issued by the Governor of the State of Washington on December 22, 1997. If the latter date is in fact the date of Jennings' arrest, the delay for speedy trial purposes is 148 days, not 187 days as Jennings contends.

Looking to the third prong of the *Barker* test, the defendant's assertion of his right to speedy trial, there is no doubt Jennings asserted his right. He did so by motion, by objection to changed trial dates, and by demand for speedy trial. Although his motions were frequently accompanied by other motions objecting to the course of the proceedings or requesting more time to prepare his defense, we are not willing to say that Jennings' assertion of his right to speedy trial was less than vigorous. We find that Jennings has met the third prong of the *Barker* test.

The final requirement in the four-part test is a showing that the delay caused prejudice to the defendant. Jennings presents no argument that he was prejudiced by the delay, and we find no evidence of prejudice in the record. Without a showing of prejudice, a defendant cannot establish a violation of his right to speedy trial. *Sides*, 963 P.2d at 230.

Balancing all of the factors of the *Barker* test, we find that the 125–day delay between arrest and trial did not violate Jennings' right to a speedy trial.

### Denial of Transcripts of Court Proceedings

At various times in the course of these proceedings, Jennings filed motions requesting copies of full and complete records of all court proceedings. In his brief to this court, he asserts that the district court failed to provide him with full and complete copies. It is not clear from his argument whether Jennings is alleging that the court denied him copies of transcripts in their entirety or that the copies provided to him were in some way incomplete or inaccurate.

We have said that we will not consider issues which are not clearly defined and which are not supported by cogent argument. *Hamburg v. Heilbrun*, 889 P.2d 967, 968 (1995). It is not the function of this court to attempt to divine the argument of a party from a brief that is unclear or abstruse. When a brief fails to present clear contentions supported by cogent argument, we have consistently refused to consider it, whether filed by a litigant pro se or by counsel.

*Madrid v. State*, 910 P.2d 1340, 1346–47 (Wyo.1996); *In Interest of FT*, 856 P.2d 1128, 1129–30 (1993). Moreover, Jennings points to no error, defect, irregularity, or variance which affected a substantial right of his; thus, error, if any, is harmless. W.R.A.P. 9.04. For these reasons, we will not further consider Jennings' claim that he was denied copies of transcripts.

### Frustration of the Defense of Entrapment

Jennings claims that the district court unlawfully frustrated his entrapment defense. Jennings does not tell us how this occurred, nor does he present any argument or authority supporting this assertion. We note from the record that Jennings was allowed to argue his entrapment "theory" in both opening and closing arguments, and the thrust of much of his questioning of witnesses went to his purported defense. The district court refused an instruction on that theory of defense because there was simply no evidence to support it other than Jennings' bald assertions. The gist of Jennings' entrapment defense was that he had been "entrapped" into escaping because that was the only way he could clear his name from the "unjust" conviction that caused his incarceration. That "theory" and the facts Jennings used to support it did not entitle him to the requested theory of defense instruction. *Swartz v. State*, 971 P.2d 137, 139–40 (Wyo. 1998). The district court committed no error in this regard, and we decline to further consider this issue.

### Credit for Time Served

Jennings claims that he is entitled to a credit on his sentence for the time he was incarcerated after his arrest in the state of Washington on October 3, 1995, until his sentence on the escape charge in Wyoming on July 1, 1998. The credit Jennings seeks amounts to two years, seven months and 29 days. The district court granted Jennings a credit on his sentence of 133 days. It is not clear from the record how the district court arrived at the 133–day figure. However, we agree that that calculation is incorrect. In arriving at the correct calculation, we shall

read the record in a light most favorable to Jennings.

Citing *Duffy v. State,* 730 P.2d 754 (Wyo. 1986), the State contends that Jennings is not entitled to credit on his Wyoming sentence on the escape conviction for time served on the Washington sentence. The State concedes, however, that if Jennings was arrested in Washington on November 12, 1997, on the Wyoming escape charge, as he claims, he may be entitled to an additional credit on his sentence beyond the 133 days given by the district court.

■ We apply the following standard for determining when credit should be given for presentence incarceration:

> For the purposes of granting credit against a prison sentence, presentence confinement is
>
> "incarceration for inability and failure to post bond on the offense for which the sentence is entered and does not include revoked probation or other confinement that would continue to exist without regard for bond posting capabilities in [the] particular proceeding. [*Renfro v. State,*] 785 P.2d [491] at 498 n. 8 [(Wyo. 1990)]." *Prejean v. State,* 794 P.2d 877 (Wyo.1990).

*Milladge v. State,* 900 P.2d 1156, 1160 (Wyo. 1995).

Using this standard, we said the defendant in *Milladge* was not entitled to credit against his sentence for time spent in custody awaiting revocation proceedings because that time was not attributable to his inability to post bond due to indigence. Likewise, in *Wayt v. State,* 912 P.2d 1106, 1110 (Wyo.1996), we declined to grant credit for time the defendant spent in jail "in spite of his capacity to post bond * * * rather than as a result of any incapacity." In *Smith v. State,* 932 P.2d 1281, 1282 (Wyo.1997), we affirmed the denial of credit where the presentence confinement was attributable, not to the defendant's indigency, but to a hold placed against him by the state penitentiary for an uncompleted sentence on a prior conviction. Then, in *Rosalez v. State,* 955 P.2d 899, 901 (Wyo. 1998), we affirmed the denial of credit where an outstanding warrant from another state would have prevented the defendant from posting bond whether or not he was indigent.

■ Under Wyoming law, as established in these cases, Jennings is entitled to credit for presentence time served in the state of Washington if he was being held solely because of his financial inability to post bond on the Wyoming escape charge. He is not entitled to credit for time served if he would have remained in custody regardless of his ability to post bond on the Wyoming escape charge.

Looking first to Jennings' claim that he is entitled to credit from October 3, 1995, we find nothing in the record to indicate that his confinement in Washington as of that date was in any way related to the Wyoming escape charge. The document which Jennings cites as support for his claim, the King County booking sheet, indicates that Jennings was arrested in the state of Washington on October 3, 1995, on charges unrelated to the Wyoming escape charge. In fact, the booking sheet makes no reference to Wyoming in any respect. The presentence investigation report confirms that Jennings was charged with burglary in Seattle, Washington, on October 3, 1995, an offense wholly unrelated to the escape charge in Wyoming. Because from the record before us it appears that Jennings' confinement in Washington beginning on October 3, 1995, was not for the charge of escape, we conclude that he is not entitled to credit on his escape sentence from that date.

■ We turn next to the question whether Jennings is entitled to credit for time served from the date of his arrest on the Wyoming escape charge. We are able to establish through reliable means that Jennings was incarcerated in Washington, for crimes committed in Washington, until at least May 19, 1997. *State v. Jennings,* 1997 WL 259259 (Wash.App. Div. 1). The conviction for which he was incarcerated was reversed because of an invalid waiver of counsel. Jennings appeared *pro se* in that appeal, as well as the underlying proceedings. On October 10, 1997, the burglary charge for which he had been incarcerated was dismissed because of a speedy trial issue. Jennings was then arrested on November 12, 1997, in Walla Walla, Washington, and held

at the Washington State Penitentiary on Wyoming's arrest warrant. The booking report also indicates that Jennings was to be held without bail for release to Wyoming authorities. Thus, it appears from the record before us that Jennings' presentence confinement in the state of Washington was not attributable to his financial inability to make bail on the escape charge but to a hold placed against him by the State of Wyoming as a fugitive from justice, making him ineligible for bail. From the record before us, therefore, we find that Jennings is entitled to credit on his escape sentence for time served from his arrest on November 12, 1997, until his sentencing on July 1, 1998. This, however, does not mean that Jennings is entitled to double credit. *Smith v. State,* 932 P.2d 1281, 1282 (Wyo.1997). If the penitentiary has credited Jennings' underlying sentence with this time served, credit should not be afforded against his escape sentence. If the penitentiary has not credited the time served, then full credit against his escape sentence should be given.

### CONCLUSION

We affirm Jennings' conviction and the judgment and sentence of the district court, with the exception of that portion of the sentence awarding credit for presentence confinement. The case is remanded to the district court with direction that Jennings' sentence be modified to reflect a credit for presentence confinement in accord with this opinion.